IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAN MASON et al.               *
                               *
v.                             *
                               *   Civil Action No. WMN-10-3143
BOARD OF EDUCATION - HOWARD    *
COUNTY PUBLIC SCHOOL SYSTEM    *
et al.                         *
                               *
* * * * * * * * * * * * * * *

**MEMORANDUM**

This case was removed to this Court from the Circuit Court for Howard County, Maryland, on November 5, 2010. Shortly thereafter, a motion to dismiss was filed in which all defendants joined except one. Paper No. 18. Plaintiffs filed a response to the motion, albeit a response of very little substance. The motion is now ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 106.5, and that the motion should be granted in part and that the case be remanded to the state court.

Until his graduation in 2010, Plaintiff Nicholas Rynn-Mason (who goes by the nickname "Neko") was a student at Oakland Mills High School in Howard County, Maryland. Neko suffers from Attention Deficit Disorder and, while at Oakland Mills, was the

beneficiary of a "504 education plan."[1] Compl. ¶ 14. Plaintiff Dan Mason (Mason) is Neko's father. Named as Defendants are: the Board of Education of Howard County (the Board); the Principal of Oakland Mills, Frank Eastham, Jr.; two Vice Principals of Oakland Mills, Dale Castrol and Mathias Bama; and Brian Henderson, who was at all times relevant to this action an assistant football coach at Oakland Mills.[2] This case arises out of three incidents that Plaintiffs allege occurred at the school in October and November of 2009.

The first incident allegedly occurred on October 30, 2009, during and after an Oakland Mills football game in which Neko was a participant. Plaintiff Mason alleges that Defendant Henderson twice attempted to attack him and that Henderson had to be restrained by other parents and coaches. Mason asserts that Defendants Castrol and/or Eastham witnessed one or both of the attempted attacks and that, instead of disciplining Henderson, Eastham and/or other agents of the Board issued a

---

[1] A "Section 504 Plan" is a plan developed to provide students with disabilities certain accommodations that would enable them to participate in the educational services and programs provided by the school. Such plans are implemented to ensure compliance with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794. See McNulty v. Bd. of Educ. of Calvert Cnty., Civ. No. 03-2520, 2004 WL 1554401 at *1 n.2 (D. Md. July 8, 2004).

[2] In the Complaint, Plaintiffs also named "Oakland Mills High School" as a Defendant. The High School is not a distinct legal entity capable of being sued and Plaintiffs conceded as much in their response. Opp'n ¶ 3.

2

baseless and retaliatory "Denial of Access Notice" to Mason which prohibited him from coming onto school property until November 13, 2009. Plaintiffs also allege that some of the Defendants "made disparaging and false statements about Dan Mason to third parties and other parents." Id. ¶ 3.

The second incident occurred on November 3, 2009. According to the Complaint, during Neko's third period class, a "former girlfriend with a history of animosity toward [him]" falsely accused Neko of being intoxicated. Id. ¶ 5. In response to this accusation, Defendant Bama met with Neko and, thereafter, either Defendant Eastham or Defendant Bama had a telephone conversation with Neko's mother. After this conversation, Neko was suspended from school for five days based upon what Plaintiffs deem to be groundless charges.

The third incident occurred on November 11, 2009. On that date, Neko was informed by Defendant Bama that he was being given in-school detention because of some unexcused absences that occurred in September and October of 2009. Neko informed Bama that he could provide notes to explain his absences, but Bama is alleged to have responded that it was "too late." Id. ¶ 8. Plaintiffs allege that by their conduct in the second and third incidents, Defendants "violated" Neko's Section 504 plan. Id. ¶ 15.

Plaintiffs assert a variety of claims related to these incidents. Plaintiff Mason brings the following state law claims related to the October 30, 2009, incident at the football game: a defamation claim against the Board and Eastham (Count II), an assault and battery claim against Henderson (Count IV), a negligence claim against the Board (Count V), a negligent hiring, retention, or supervision claim against the Board, Eastham, Castol, and Bama (Count IV), a civil conspiracy claim against the Board (Count VIII), and a negligent contracting claim against the Board (Count IX). For reasons not readily apparent, Neko joined with his father in asserting the negligence and conspiracy claims. Neko also brought the following claims of his own against the Board and Bama related to his suspension and detention: a claim for violation of his "due process rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution as well as the Americans with Disabilities Act" (Count I) and a claim for defamation (Count III).[3]

---

[3] Plaintiffs also include in the Complaint counts that they denominate as "Respondeat Superior" (Count VII) and "Punitive Damages" (Count X). Respondeat superior is not a separate cause of action, but rather a doctrine that permits the imputation of liability on a principal or employer for the act of an agent or employee. Davidson-Nadwodny v. Wal-Mart Assoc., Inc., Civ. No. CCB-07-2595, 2008 WL 2415035 (D. Md. June 3, 2008). Punitive Damages also is not a separate cause of action, but simply a category of potential recovery.

Defendant Henderson filed an answer to the Complaint while the case was still in state court. The remaining defendants, joined by Defendant Henderson, removed the case to this Court solely on the basis of the federal claims asserted in Count I. These remaining defendants then moved to dismiss all of the claims brought against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations are not required, but allegations must be more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action[.]'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 330 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled

allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

Because this Court's jurisdiction over this action is premised on the federal claims asserted in Count I of the Complaint, the Court will begin its analysis there.  In moving to dismiss those claims, the moving defendants raise legal arguments attacking the sufficiency of the allegations in the Complaint to support the claims asserted.  In urging the dismissal of this count to the extent it is premised on Section 504 of the Rehabilitation Act or Title II of the Americans with Disabilities Act (ADA), Defendants aver that there is no allegation in the Complaint that the five-day suspension and the in-school detention were due to discrimination.[4]  They also contend that any discipline that results in a student missing less than ten school days does not, as a matter of law, result in a denial of a free appropriate public education or a denial of due process.[5]

---

[4] Defendants opine that the Complaint failed to disclose Neko's disability, Mot. at 6 n.16, but it clearly did.  See Compl. ¶ 14.

[5] Defendants also argued, and Plaintiffs conceded, that there is no individual liability under the ADA.  See Opp'n ¶ 4.

In addressing Plaintiffs' claim under the United States Constitution, Defendants begin by assuming, as they must, that Plaintiffs intended to bring this claim pursuant to 42 U.S.C. § 1983. See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) (explaining that § 1983 does not provide for any substantive rights but serves to ensure that an individual has a cause of action for violations of the Constitution); Verizon Maryland Inc. v. RCN Telecom Services, Inc., 232 F. Supp. 2d 539, 554 (D. Md. 2002) (observing that § 1983 provides a cause of action for any person whose federal rights, whether constitutional or statutory, have been violated by a state actor under color of state law).  In moving to dismiss Plaintiffs' § 1983 claim, Defendants note that the Board is not a "person" subject to suit under § 1983.  As to the § 1983 claim as asserted against Defendant Bama,[6] Defendants argue that, even according to the allegations in the Complaint, Neko was provided all the process he was due in light of the nature of the discipline imposed.  Furthermore, Defendants argue that Bama is entitled to absolute immunity under the Paul D. Coverdell

---

[6] There is some ambiguity as to whether Plaintiffs even intended to assert a cause of action against Bama under § 1983.  In their cursory response to Defendants' motion, Plaintiffs declare that "all claims against the individual Defendants namely Mathias Bama, Frank Eastham, and Dale Catrol have been made solely as to properly plead/confer Respondeat Superior liability against [the Board]."  Opp'n ¶ 7 (emphasis added).  It is well established, of course, that there is no respondeat superior liability under § 1983.  Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004).

7

Teacher's Protection Act, 20 U.S.C. § 6731, as well as qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Despite what are predominately legal arguments, Plaintiffs' only response in support of the claims asserted in Count I is their assertion that the motion is premature and they need discovery to prove their claims.[7]

The Court finds that the Complaint does not state a claim under § 504 of the Rehabilitation Act, Title II of the ADA, or § 1983. As to Section 504 and Title II, the Court agrees with Defendants that neither a five-day suspension nor an in-school detention implicate the protections of these statutory provisions. In Honig v. Doe, 484 U.S. 305 (1988), the Supreme Court deferred to the position of the Department of Education's Office for Civil Rights (OCR) that a suspension for less than ten days does not amount to a "change in placement" prohibited by the predecessor to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. The Court reasoned that "the power to impose fixed suspensions of short durations does not carry the potential for total exclusion [of students

---

[7] As to the claims asserted in Count I, Plaintiffs' entire response is the following sentence: "That the Motion to Dismiss relative to Nekos' claims of discrimination under sect 504 and/or title II of the ADA should be denied as discovery would be necessary for Plaintiff to prove his claims and/or Defendant to adequately dispute Plaintiff's claims." Opp'n ¶ 6 (emphasis in original).

8

with disabilities] that Congress found so objectionable." 484 U.S. at 325 n.8. The OCR, which is charged with enforcing § 504 and Title II, has consistently concluded that a suspension of less than ten days does not constitute "a significant change in placement" or a denial of a "free appropriate education" to implicate the protection of these statutes. See OCR Staff Memorandum, 16 IDELR 491 (OCR Nov. 13, 1989); Metro. Nashville Pub. Sch., 28 IDELR 887 (OCR Dec. 19, 1997). Plaintiffs have provided no authority to the contrary.

As to Plaintiffs' constitutional claims brought under § 1983, the Supreme Court has recognized that the temporary suspension of a public school student does implicate his right to due process under the Fourteenth Amendment. Goss v. Lopez, 419 U.S. 565, 581 (1975). The Court in Goss found that the Due Process Clause thus requires certain "rudimentary precautions" against unfair or mistaken findings of misconduct and arbitrary exclusion from school. Id. More specifically, "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." Id. The Court emphasized that these requirements can be satisfied by an informal discussion between a school official and the student:

> In the great majority of cases the disciplinarian may
> informally discuss the alleged misconduct with the
> student minutes after it has occurred. We hold only
> that, in being given an opportunity to explain his
> version of the facts at this discussion, the student
> first be told what he is accused of doing and what the
> basis of the accusation is.

419 U.S. at 582.

In their motion, Defendants posit that the allegations in the Complaint establish that Plaintiffs received all the due process required under Goss. After receiving the report that Neko was intoxicated, Defendant Bama "met and spoke with Neko" and then either Bama or Eastham had a telephone conversation with Neko's mother. Compl. ¶ 6. These conversations gave Neko and his parents notice and an opportunity to be heard before Neko was suspended. Defendants also note that Plaintiffs did not appeal Neko's suspension. In their response, Plaintiffs provide no argument or authority that additional process was required.

Finally, as to any § 1983 claim that could be based upon Neko's in-school detention, courts have consistently held that a plaintiff's in-school suspension would not implicate the requirements of due process. Laney v. Farley, 501 F.3d 577, 582 (6th Cir. 2007) (collecting cases). Certainly, an in-school detention is less onerous than an in-school suspension. Furthermore, Defendants note that, prior to the imposition of detention, Neko was informed of the reason for this discipline

and Neko responded.  See Compl. ¶¶ 7, 8.  Again, Plaintiffs offer no argument or authority to the contrary.

Having determined that it will dismiss the only federal claims raised in the Complaint, the Court has the discretion to remand this action to the state court.  See Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 316 (4th Cir. 2001) ("[I]n a case in which the federal claims had been deleted from the complaint by the plaintiff, before trial, following a removal from a state court, the district court had the discretion to remand the pendent state-law claims to the state court." (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988))).  In exercising its discretion, the Court should weigh the factors of judicial economy, convenience, fairness, and comity.  Cohill, 484 U.S. at 351.  Typically, the "balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7.  Here, those factors certainly point to remand. Without the federal claims, what remains is a dispute between a student and his parent and the local school board asserting straightforward claims of assault and battery, defamation and negligence.

For these reasons, Count I of the Complaint will be dismissed and the remaining claims remanded to the Circuit Court for Howard County, Maryland.  A separate order will issue.

_____/s/_____
                                William M. Nickerson
                                Senior United States District Judge



DATED: January 11, 2011.